IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CASSADY WARD, | § § § § § § § § § | |
| Plaintiff, | | CIVIL ACTION NO. 4:22-CV-00745-SDJ-AGD |
| v. | | |
| CITY OF ALLEN, ET AL., | | |
| Defendants. | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the court is Defendant City of Allen's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Brief in Support ("Motion to Dismiss") (Dkt. #14). After reviewing the Motion to Dismiss, and all other relevant filings, the court recommends the Motion to Dismiss be **GRANTED**, and further recommends Plaintiff's claims against the City of Allen be **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

*Procedural History*

On August 30, 2022, Plaintiff Cassady Ward filed suit in the District Court for the Eastern District of Texas against Defendants City of Allen, James Skinner, and John Does 1–5, alleging six constitutional violations under 42 U.S.C. § 1983 (Dkt. #1). On November 14, 2022, Ward filed his First Amended Complaint, which remains the live pleading, naming as Defendants City of Allen, Chief Brian Harvey, individually and in his official capacity as Allen Chief of Police, Lieutenant Steven May, individually and in his official capacity, Sargent Cody Turner, individually and in his official capacity, Officer William Brindza, individually and in his official capacity, and Officer Keith White, individually and in his official capacity (Dkt. #7).

*City of Allen's Motion to Dismiss*

On November 28, 2022, the City filed the instant Motion to Dismiss (Dkt. #14). The City argues that dismissal of Ward's claims against it is proper under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted (Dkt. #14 at 4). The City moves to dismiss primarily because the factual allegations do not "establish a deprivation of a federally protected right caused by action taken pursuant to an official municipal policy" (Dkt. #14 at 4). On Dember 31, 2022, Ward Filed his Brief in Opposition to the City's Motion to Dismiss (Dkt. # 22). On January 17, 2023, the City filed its Reply (Dkt. # 25).

*Factual Background*

Ward's claims arise out of an interaction between Ward and the City police on July 4, 2022, as part of Ward's amateur sting operation to expose child sexual predators (Dkt. #7 at 4). Ward alleges he lures child predators to his home by posing as a minor on dating apps (Dkt. #7 at 4). Ward then films the interaction and posts the video to his YouTube channel, which has more than a million followers (Dkt. #7 at 4–5). On July 4, 2022, Ward called the Allen police to apprehend a suspected predator (Dkt. #7 at 6). According to Ward, the police had generally supported his amateur sting efforts in the past (Dkt. #7 at 6). However, on this occasion, the police requested that Ward relinquish his phone, cameras, and memory cards to investigate both the suspected predator and Ward for crimes (Dkt. #7 at 11–12; Dkt. #14 at 9). As to Ward, the investigation included impersonating a public servant and unlawful restraint (Dkt. #14 at 9). Ward asserts that this change in treatment indicates a change in official City policy (Dkt. #7 at 6). Moreover, Ward argues that this new policy deprived him of his constitutional rights (Dkt. #7 at 26–29). As such, Ward asserts six claims under 42 U.S.C. § 1983: (1) violation of his First Amendment right to freedom of speech, (2) violation of his First Amendment right to free speech by prior restraint, (3)

violation of his First Amendment right to free speech by retaliation, (4) violation of his Fourth Amendment right by excessive use of force, (5) violation of his Fourth Amendment right by unlawful search and seizure, and (6) violation of his Fourteenth Amendment right to equal protection by selective prosecution (Dkt. #7 at 26–29).

## LEGAL STANDARD

### *Federal Rule of Civil Procedure 12(b)(6)*

"To survive a motion to dismiss [pursuant to Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555. A court generally may not "go outside the complaint" in considering a Rule 12(b)(6) motion but may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).[1]

---

[1] To assess the sufficiency of a complaint, the court first identifies conclusory allegations and disregards them, for they are "not entitled to the assumption of truth," and then considers whether the remaining allegations "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

*42 U.S.C. § 1983*

The Supreme Court in *Monell* held that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A municipality may not be held liable under § 1983 on the basis of *respondeat superior*. *Hicks-Fields v. Harris County, Tex.*, 860 F.3d 803, 808–09 (5th Cir. 2017). Accordingly, a plaintiff suing a city under § 1983 "must show (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (internal quotation marks omitted). Governmental policy or custom "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citations and internal quotation marks omitted). If the policy at issue is not facially unconstitutional, a city must have adopted the policy with deliberate indifference as to its known or obvious consequences. *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009). Moreover, liability may be imposed "only where [the government entity] *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694–95) (emphasis in original). Finally, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Thomas v. State*, 294 F. Supp. 3d 576, 608 (N.D. Tex. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167

(5th Cir. 1997)), *report and recommendation adopted*, No. 3:17-CV-0348-N-BH, 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018). In other words, "a plaintiff must do more than describe the incident that gave rise to his injury." *Peña v. City of Ria Grande City*, 879 F.3d 613, 22 (5th Cir. 2018). As such, Ward must establish that the City's official policy or firmly entrenched custom, of which a City official had actual or constructive knowledge, caused the alleged constitutional violations. *See Monell*, 436 U.S. at 694.

## ANALYSIS

Ward does not state a plausible § 1983 claim against the City because he does not identify a specific policy or custom or a policy-maker with knowledge of that policy or custom. Further, because he failed to identify a specific custom or policy, Ward additionally failed to establish how the City itself caused the alleged constitutional violations at issue.

### *Official Policy or Custom*

Ward's pleadings do not identify the City's written policy or custom "so persistent and widespread as to practically have the force of law." *Peña*, 879 F.3d at 621–22. According to Ward, the City had a policy of cooperating with citizens conducting amateur stings but changed that policy sometime between July 1 and July 4, 2022 (Dkt. #7 at 5–6). Ward alleges that he was aware of this policy based on his interactions with the police on and before July 1, 2022, compared to the interaction that took place on July 4, 2022 (Dkt. #7 at 5–6). However, Ward's argument that different treatment by different officers over the course of a few days constitutes a change in policy is conclusory and not supported by "specific facts." *Thomas*, 294 F. Supp. at 608. While the officers do reference their "supervisor," and indicate that they were acting under the direction of the criminal investigation unit, the officers never contacted any supervisors (Dkt. #7 at 9–23). In fact, the officers instead seemed to be operating under Lt. May's direction (Dkt. #7 at 9–23). For

example, Ward's complaint states that "[w]ithout waiting to hear from a supervisor, Lt. May insisted that they need all of the cameras . . ." (Dkt. #7 at 17). Ward's complaint also states that "[a]fter Lt. May made his final decision, Officer Brindza said they have to gather all the cameras so that 'our criminal investigators can go through all of this stuff and get a good case.'" (Dkt. #7 at 18). It appears the officers were following orders from their superior in the field, not referencing a persistent, widespread City policy or custom. Moreover, "a plaintiff must do more than describe the incident that gave rise to his injury." *Peña*, 879 F.3d at 622. Here, Ward only describes the incident which gave rise to his claims and, as such, offers insufficient facts to demonstrate a City policy or custom regarding treatment of amateur sting operations. Thus, Ward's allegations do not state a claim for relief under the first prong of a § 1983 claim.

### ***Policy-Maker's Actual or Constructive Knowledge of Policy***

A city cannot be liable for an unwritten custom unless "[a]ctual or constructive knowledge of such custom" is attributable to a city policy-maker. *Peña*, 879 F.3d at 623. "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information." *Hicks-Fields*, 860 F.3d at 808–09 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984). A governing body may have constructive knowledge "if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id.*

Here, Ward's complaint does not identify a particular policy-maker, nor does it allege facts to show that a policy-maker had actual or constructive knowledge. Ward's complaint often refers to "a new City policy" but does not identify the department or individual responsible for implementing the policy (Dkt. #7 at 6). Even if Ward had identified the policy-maker, he offers no facts demonstrating actual knowledge by means of discussions or written policy (Dkt. #7). Ward

also has not plead facts establishing constructive knowledge of the alleged policy by the City, whether it be prolonged public discussion or otherwise (Dkt. #7). Because Ward's complaint invites no more than speculation that any particular policy-maker knew about the alleged policy, his allegations do not state a claim for relief under the second prong of a § 1983 claim.

### *Causation*

Even if the City had changed its policy in early July 2022, Ward's complaint indicates that the officers were acting at the direction of Lieutenant May, not a City policy. *See City of Canton*, 489 U.S. at 385 (explaining that liability may be imposed "only where [the governmental entity] *itself* causes the constitutional violation at issue"). Indeed, Ward's complaint contains the following statements and quotes from the police on July 4, 2022:

- "Officer Brindza came in and said, 'This is the direction we are going to go, and this comes from our criminal investigation unit.' According to Brindza, the Police were required to seize Plaintiff's phone and the predator's phone and all of Plaintiff's cameras." (Dkt. #7 at 16).
- "Neither Officer Brindza nor any of the Police checked with either the supervisor, [or] the criminal investigation unit . . ." (Dkt. # 7 at 17).
- "Officer Brindza said that just taking the memory cards was a 'reasonable request, and if we can just take the memory cards, we will just take the memory cards.' He said he would check with his supervisor. Without waiting to hear from a supervisor, Lt. May insisted that they need all of the cameras . . ." (Dkt. #7 at 17).
- "After Lt. May made his final decision, Officer Brindza said they have to gather all the cameras so that 'our criminal investigators can go through all of this stuff and get a good case.'" (Dkt. #7 at 18).
- "Lt. May then demanded that Plaintiff give up his phone because, he said 'We have to determine if you committed an offense.'" (Dkt. #7 at 20).

Thus, Ward's complaint indicates that the officers were following the chain of command rather than operating under an official City policy. Because the officers were not acting pursuant to a City policy, the City could not have caused the claimed constitutional violations.

Finally, because the court concludes that the City did not have an official policy regarding amateur sting operations, Ward failed to identify a policy-maker with knowledge of the alleged

policy. Accordingly, the court does not decide the issue of whether Ward sufficiently plead violations of his constitutional rights. Therefore, because Ward cannot establish a causal connection between a policy or custom and his claimed constitutional violations, his allegations do not state a claim for relief under the third prong of a § 1983 claim.

Ward's allegations of a "new City policy" are conclusory and are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Because the live pleading contains no allegations of actionable conduct by the City, Ward is not entitled to relief from the City. Ward has therefore failed to state a claim for municipal liability under § 1983, and his claims should be dismissed with prejudice.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the court recommends that Defendant City of Allen's Motion to Dismiss Plaintiff Cassady Ward's Amended Complaint Pursuant to Rule 12(b)(6), (Dkt. #14), be **GRANTED**, and Plaintiff's claims against the City of Allen be **DISMISSED WITH PREJUDICE** as set forth herein.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district

court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 13th day of September, 2023.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE